UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------X
GLADYS MARTINEZ,
                      Plaintiff,

**MEMORANDUM & ORDER**

-against-

10 CV 0471

MICHAEL J. ASTRUE,
Commissioner of Social Security,
                      Defendant.
-------------------------------------------------X
DEARIE, Chief Judge.

Plaintiff Gladys Martinez brings this action pursuant to 42 U.S.C. § 405(g) for review of the final decision of the Commissioner of Social Security that she is not disabled. Both parties move pursuant to Rule 12(c) of the Federal Rules of Civil Procedure for judgment on the pleadings. For the reasons set forth below, their motions are denied, and the case is remanded for further proceedings.

## Background

Plaintiff worked for sixteen years in the airlines industry, primarily as a security guard for TWA beginning in 1986. In October 2001, after American Airlines acquired TWA, she was transferred to Kansas City to work in fleet services cleaning airplanes. Plaintiff briefly worked as a clerk, taking orders and issuing airplane parts to mechanics, but she returned to fleet services after she failed a required test. On her days off, she traveled back to New York City to be with her husband, her grown son and her elderly mother. She began experiencing increasing anxiety, insomnia and worsening asthma, however, from the frequent travel. (Tr. 248.) Plaintiff was out of work for one month from September 2002 to October 2002 due to severe asthmatic bronchitis. (Tr. 150). Shortly thereafter, at the end of November 2002, she retired. She was fifty-six years

old.

Plaintiff applied for disability insurance benefits on November 3, 2006, alleging disability as of November 25, 2002, due to asthma, degenerative disc disease, high cholesterol and insomnia. Plaintiff's application was denied in April of 2007. Her insured status expired on December 31, 2007. On February 24, 2009, she appeared at a hearing, with counsel, before Administrative Law Judge Hazel C. Strauss. On March 30, 2009, ALJ Strauss issued an opinion finding that plaintiff's only severe impairment was asthma and that she was not disabled because she was able to perform her past relevant work. Plaintiff's request for review was denied by the Appeals Counsel on December 7, 2009. This action followed.

## Discussion

Under 42 U.S.C. § 405(g), this Court "may set aside the Commissioner's determination that a claimant is not disabled if the factual findings are not supported by substantial evidence or if the decision is based on legal error." Burgess v. Astrue, 537 F.3d 117, 127 (2d Cir. 2008) (quoting Shaw v.Chater, 221 F.3d 126, 131 (2d Cir. 2000) (internal quotation marks omitted)). Because the ALJ's determination is neither supported by substantial evidence nor based upon the correct legal standards, this case must be remanded for further proceedings.

Plaintiff was in a car accident in 1998[1] and injured her back in a fall down stairs in 2001. (Tr. 266.) On November 13, 2006, she began treatment with Dr. Alluri, a neurologist, for worsening lower back pain. On January 26, 2009, thirteen months after plaintiff's date last insured, he completed the sole medical assessment in the record of plaintiff's ability to do

---

[1] Consultative examiner Dr. Luke Han's report indicates that plaintiff injured her lower back and right knee in the car accident. (Tr. 206.) The record includes the results of a cervical spine MRI, dated October 17, 1998, showing a posterior disc bulge at C3-C4 and "loss of the normal cervical lordosis probably related to soft tissue injury or muscle spasm." (Tr. 151.)

physical work-related activities. Dr. Alluri opined that plaintiff was able to lift and carry a maximum of five pounds; stand or walk for two hours in an eight-hour day, with pain after fifteen minutes; and sit for one half hour without interruption, with increasing pain thereafter. (Tr. 278.) He elaborated that plaintiff experienced pain, spasm and decreased range of motion from prolonged sitting, standing and excessive physical activity. (Tr. 278-79.)

Dr. Alluri diagnosed plaintiff with L5 segmental dysfunction and stenosis of L4-L5 and L5-S1 based on her initial visit. (Tr. 266-67.) X-rays which were taken of plaintiff on October 3, 2006, showed "severe narrowing of the L5-S1 disc space and moderate to severe stenosis of L4-5 and L5-S1 exit foramina due to degenerative disc disease and facet arthropathy." (Tr. 160.) The radiologist also noted muscle spasm. (Id.) Nerve conduction studies performed on November 13, 2006, of plaintiff's lower extremities were abnormal and "suggestive of right L5 segmental dysfunction." (Tr. 266-67.)

At a follow-up visit on January 3, 2007, Dr. Alluri diagnosed plaintiff with herniated discs at L3-L4, L4-L5 and L5-S1, with neural foraminal encroachment. (Tr. 265.) An MRI of plaintiff's lumbar spine, which was performed on November 14, 2006, indicated "(1) muscle spasm in lumbar spine, (2) mild levoscoliosis of lumbar spine, (3) multi-level degenerative disc disease, (4) mild left-sided disc herniation at L3-L4 level causing mild encroachment into left exit foramina, (5) mild circumferential disc herniation at L4-L5 level causing mild encroachment into left exit foramina, and (6) mild central and left paracentral disc herniation at L5-S1 level causing mild encroachment into left exit foramina." (Tr. 255.) Mild narrowing of the L4-L5 and severe narrowing of the L5-S1 disc spaces with loss of normal disc signals due to multi-level degenerative disc disease were also found. (Id.)

In addition, on July 11, 2007, when plaintiff was examined by neurologist Dr. Michael H. Schuman, a doctor in the same office as Dr. Alluri, straight leg raising on the left side was painful and her left knee jerk response was reduced as compared to her right. (Tr. 264.) On December 21, 2007, Dr. Alluri found evidence of "mild C5 radiculopathy" based on a "slightly abnormal" EMG. (Tr. 262.) Less than a year after plaintiff's insured status expired, on December 1, 2008, an MRI of her lumbar spine showed diffuse degenerative disc disease, levoscoliosis and an L5-S1 small left paracentral herniation. (Tr. 254.) Electrophysiological studies performed on December 15, 2008, indicated L5 radiculopathy. (Tr. 259.)

Notwithstanding this evidence in the record, the ALJ determined that plaintiff's back issues did not cause more than "minimal limitation in [her] ability to perform basic work activities" and, therefore, were not "severe." (Tr. 15.) She accorded Dr. Alluri's treating physician opinion neither "controlling" nor "significant" weight on the ground that "[a]lthough he stated that [plaintiff] had increased pain, spasms, and decreased range of motion, his records prior to [her] date last insured have no findings of spasm or decreased range of motion." (Tr. 24.) Instead, the ALJ assigned the physical capacity assessment "little weight" on the ground that the "only stated basis for the limitations [Dr. Alluri] indicated are [plaintiff's] complaints of pain." (Id.) She proceeded to determine that plaintiff was capable of work at all exertional levels, giving "great weight," (Tr. 24), to the March 30, 2007 opinion of consultative examiner Dr. Han that plaintiff "should avoid smoke, dust, or known respiratory irritants." (Tr. 209.)

As an initial matter, the ALJ's assertion that there were no findings of spasm or decreased range of motion to support Dr. Alluri's opinion is contradicted by the record. Plaintiff's November 14, 2006 MRI indicated "muscle spasm in lumbar spine," (Tr. 255), and her

4

examination report dated July 11, 2007, indicated that she had pain upon straight leg raising on the left side, (Tr. 264). Furthermore, even though Dr Han's diagnoses included "[d]egenerative disc disease, lumbar vertebrae" and "low back pain," (Tr. 209), his opinion that plaintiff "should avoid smoke, dust, or known respiratory irritants" addressed only a non-exertional limitation. He did not include any assessment of plaintiff's physical capacity to sit, stand, walk, lift or carry. Indeed, with respect to plaintiff's back pain, the disability examiner who reviewed plaintiff's file as of April 10, 2007, concluded that her capability was "not assessable." (Tr. 239.) The examiner further noted that the file did not include any treating or examining source statement regarding her physical capacities. (Tr. 240.)

Thus, the ALJ's residual functional capacity determination that plaintiff had no exertional restrictions was not based upon a medical assessment of plaintiff's physical limitations. Instead, the ALJ based her determination on her own evaluation of the medical findings in the record, committing legal error. Hilsdorf v. Commissioner of Social Sec., No. 08-CV-5290, 2010 WL 2836374, *13 (E.D.N.Y. July 15, 2010) (citing Woodford v. Apfel, 93 F. Supp. 2d 521, 529 (S.D.N.Y. 2000) ("Because an RFC determination is a medical determination, an ALJ commits legal error when he makes a residual functional capacity determination based on medical reports that do not specifically explain the scope of claimant's work-related capabilities."); Zorilla v. Chater, 915 F.Supp. 662, 666-67 (S.D.N.Y. 1996) ( "The lay evaluation of an ALJ is not sufficient evidence of the claimant's work capacity; an explanation of the claimant's functional capacity from a doctor is required.")).

Moreover, despite plaintiff's ongoing treatment relationship with Dr. Alluri that began more than a year before the end of the relevant period, the ALJ did not seek clarification or a

5

retrospective assessment from him regarding her condition at the end of 2007. Consequently, the ALJ failed to carry out her obligation to adequately develop the administrative record. See Shaw v. Chater, 221 F.3d 126, 131 (2d Cir. 2000) ("[t]he ALJ has an obligation to develop the record in light of the non-adversarial nature of the benefits proceedings, regardless of whether the claimant is represented by counsel."); Brown v. Apfel, 97-CV-4404, 1998 WL 767140, at *4 (E.D.N.Y. July 22, 1998) (ALJ errs in not seeking retrospective diagnosis where "evidence . . . suggests that the petitioner's condition and symptoms were constant, making it more likely that . . . a retrospective assessment . . . would state that the plaintiff's condition caused him to be unable to work during the time period for which he is seeking benefits"). It is particularly unfortunate in this case that plaintiff's request for a hearing was acknowledged as received by the Social Security Administration on July 23, 2007, over five months before her date last insured, but her hearing was not scheduled until a year after her insured status expired.

The vocational expert at plaintiff's hearing testified that if plaintiff were limited to work requiring lifting ten pounds occasionally, sitting six out of eight hours, and standing and walking two out of eight hours, with sitting or standing as needed, occasional climbing of stairs, stooping, balancing, and crouching, but no crawling, pushing, pulling or lifting arms overhead,[2] plaintiff would not be able to perform her past relevant work and would not be able to perform any other work available in the national economy. (Tr. 327.) The ALJ disregarded this testimony, however, and relied instead on the vocational expert's testimony that, assuming plaintiff's only limitation during the relevant period was to avoid concentrated exposure to dust, fumes and

---

[2] "Sedentary work" requires the ability to lift no more than ten pounds occasionally and the ability to sit for six hours in an eight hour work day. See Rosa v. Callahan, 168 F.3d 72, 78 n.3 (2d Cir. 1999); 20 C.F.R. § 404.1567(a).

6

respiratory irritants, she retained the capacity to perform each of her past relevant jobs: airline security representative (light work), immigration guard (medium work), parts clerk (medium work) and airplane cleaner (medium work). Because the residual functional capacity assumed in this hypothetical is not supported by substantial evidence, however, this expert testimony cannot support the disability determination. Dumas v. Schweiker, 712 F.2d 1545, 1553-54 (2d Cir. 1983) (Commissioner may not rely on vocational expert testimony based on hypothetical assumptions which are not supported by substantial evidence.)

Finally, the Court notes that the ALJ's conclusion that plaintiff was "unlimited in going about her daily activities,"(Tr. 23), is based on a misstatement of plaintiff's testimony. The ALJ summarized: "she cooks, sweeps, mops, washes dishes, makes her bed, and shops, sometimes by driving or walking . . . attends church, and visits with her son, daughter and sister." (Tr. 22.) Plaintiff's actual testimony, however, reflects that she cooks only things that are "very fast," she usually goes grocery shopping with her sister, her sister takes care of her laundry, and her family comes to her for visits.[3] (Tr. 314-15.) Her testimony is consistent with her answers on her disability application indicating that she "cannot stand for a long time . . . to cook a big meal" so she "make[s] everything that is fast," shops for "fast food" meals, and requires ten to fifteen minute breaks when she is cleaning before she can continue. (Tr. 104-111.)

## Conclusion

Both parties' motions for judgment on the pleadings are denied. The case is remanded to the Commissioner for further proceedings consistent with this opinion, including, but not limited

---

[3] At the time plaintiff applied for disability, she was divorced and living alone.

7

to, contacting plaintiff's treating physician for a complete assessment of her residual functional capacity prior to the expiration of her insured status. As indicated at oral argument, the Court anticipates that this matter will be addressed and resolved promptly within sixty (60) days of the date of this order. The Clerk of the Court is directed to close this case.

SO ORDERED.

Dated: Brooklyn, New York
December 9, 2010

s/ Judge Raymond J. Dearie

RAYMOND J. DEARIE
United States District Judge